Argued September 9; affirmed October 14, 1941

IN RE BUELL'S ESTATE

McKINLEY *v.* ALLEN ET AL.

(117 P. (2d) 832)

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*C. H. Greene*, of Portland (Beach, Simon & Greene, of Portland, on the brief), for appellants.

*Clifford W. Powers*, of Portland, for respondent.

The plaintiff seeks a decree determining the heirs and distributees of the estate of Ida May Buell. The testatrix Ida May Buell had a brother Charles L. Brush and a sister Emma A. Wilkinson. The plaintiff Ruth Lenore McKinley is the adopted daughter of Emma A. Wilkinson.

In 1934 the testatrix executed and published her will by the terms of which she devised and bequeathed to her sister Emma A. Wilkinson her entire estate. The beneficiary under the will died in 1937. A year and a half later the testatrix Ida May Buell died. No change was made in the will by the testatrix after the death of her sister Emma A. Wilkinson, the beneficiary.

The plaintiff, as the adopted daughter of the beneficiary, claims the estate. The defendant, brother of the testatrix, asserted that the bequest in the will had lapsed by reason of the fact that the beneficiary predeceased the testatrix, and that he, as the sole heir of the testatrix, was entitled to the estate. He died during the course of the litigation and is now represented by Mary Allen, his administratrix.

The facts are not in dispute. The decision below was for the plaintiff.

BRAND, J.

■ At early common law, since the beneficiary in a will predeceased the testatrix, the bequest would have lapsed and the property would have been distributed as if upon intestacy. 1 Underhill on the Law of Wills, 436, § 324; *Scott v. Ford*, 52 Or. 288, at 294, 97 P. 99 (1908). Under the Oregon anti-lapse statute, however, it is clear that if the plaintiff had been in fact the heir of the body of Emma A. Wilkinson the bequest would not have lapsed and the plaintiff would have taken the estate. The only question at issue therefore, is whether the bequest lapsed by reason of the fact that the plaintiff is the child of Emma A. Wilkinson by adoption rather than by consanguinity.

■ As to the power of the legislature to endow an adopted child with rights in this particular, identical to those of an heir of the body begotten, there can be no serious question. We inquire only whether or not it has done so. The anti-lapse statute, enacted in 1853, provides:

"When any estate shall be devised to any child, grandchild, or other relative of the testator, and such devisee shall die before the testator, leaving lineal descendants, such descendants shall take the estate, real and personal, as such devisee would have done in case he had survived the testator." 2 O. C. L. A. § 18-604.

■ It must be conceded, notwithstanding a tentative argument to the contrary, that a sister is a relative, so the first requirement of the anti-lapse statute is met. An estate was devised to a relative and the relative died before the testator. If, therefore, the adopted child

of the relative comes within the classification of "lineal descendants" it follows that she should take the estate as the devisee would have done had the devisee survived the testator.

■ The rights of an adopted child are defined by statute. It is provided that from the date of the decree of adoption "the child shall, to all legal intents and purposes, be the child of the petitioner." 5 O. C. L. A. § 63-406 (1864).

"A child so adopted shall be deemed, for the purposes of inheritance of such child, and all other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them by lawful wedlock; except that he shall not be capable of taking property expressly limited to the heirs of the body or bodies of the parent by adoption, nor property from the lineal or collateral kindred of such parents by right of representation." 5 O. C. L. A. § 63-407 (1864).

■ Appellant argues, in substance, that when the antilapse statute was enacted adoption was unknown in Oregon and that therefore the term "lineal descendants" could not include adopted children unless the statute were expressly amended. This contention is refuted by the authorities. The New Jersey court discussed in another connection the adoption statute of that state, and said:

"* * * It changes the statutory rules regulating the devolution of property, not by amending, or repealing pro tanto, the provisions of pertinent legislative enactments, but by enlarging the class for whose benefit they were originally passed (that is, the children born to the decedent, and their issue), by making the adopted child a lawful child of the decedent for the purpose of sharing in the distribution of his estate." *In Re Book's Will*, 90 N. J. Eq. 549, 107 A. 435 (1919).

■ The New York court, in discussing a case which we shall later notice, said concerning its adoption statute:

"What then is the escape from this statute? The plea is, that because section 29 of the Decedent Estate Law (formerly R. S. part 2, ch. 6, tit. 1, art. 3, § 52) was the law before the present adoption statute was enacted (Laws of 1887, ch. 703), the words 'child' and 'descendant' must be limited to blood relationship as they were when the Revised Statutes became the law. The answer to this suggestion is that the Legislature passed both the Decedent Estate Law and the Domestic Relations Law and had full power over the disposition of property by will or descent. By the latter law it made an adopted child the same as a natural child for the purposes of inheritance from its foster parent. Such a 'child' thus created by the Legislature fitted in exactly to the existing Decedent Estate Law, section 29, which said that a legacy to a brother would not lapse by his death but pass to his child 'as if such legatee (brother) * * * had survived.' The 'child' created by the Legislature would take on survivorship under the adoption statutes (Dom. Rel. Law). *The Legislature could not make it plainer and there was no need for amending section 29.*" (Italics ours.) *Matter of Walter's Estate*, 270 N. Y. 201, 200 N. E. 786 (1936).

"* * * In determining the right of an adopted child to inherit under the statutory provisions of a jurisdiction, the courts must look to the laws of succession and the statutes on adoption must be read into the succession laws." 2 C. J. S. 452, § 63.

If the adoption statute enlarged the class of beneficiaries described in the anti-lapse statute, by including adopted children therein, then the plaintiff would be entitled to prevail and no amendment to the anti-lapse statute would be necessary.

■ Unlike the provisions in many states, the Oregon statute extends to adoptees the rights of natural chil-

dren in the most comprehensive and unambiguous terms. The right of inheritance from an adoptive parent who dies intestate is clearly granted.

"A child so adopted shall be deemed, for the purposes of inheritance of such child, * * * the child of the parents by adoption, * * *."

■ No further words were necessary to accomplish that end. No statute whatever was necessary to entitle an adopted child to take property specifically devised to him by will. Yet the legislature provided further, that the adoptee shall be deemed, for the purposes of inheritance,

"*and all other legal consequences and incidents of the natural relation of parents and children, the child * * * the same as if he had been born to them by lawful wedlock; * * *"* 5 O. C. L. A. § 63-407.

■ The legislative purpose must be to invest adopted children with rights additional to the right of inheritance in the event of intestacy or the right to take as a named devisee. Again, the language is not that they shall have rights *similar* to those of natural children; on the contrary, it is provided that an adoptee *shall be deemed the child* as if born by lawful wedlock. He shall "to all legal intents and purposes, *be the child of the petitioner.*"

■ Two exceptions are made by the statute: First, if property is expressly limited to the heirs of the body of the adoptive parent, the adoptee shall not take. The words "heirs of the body" embrace two distinct concepts: One a legal condition of heirship; the other a nonlegal condition of fact, indicating that one is in reality the issue of the body of the parent. While the legislature has plenary power to determine the rights

of adoptees, it does not and cannot make an adoptee an heir of the body. The right of a testator to exclude adoptees from any share of his estate, by an express limitation to "heirs of the body," is thus preserved.

The second statutory exception accomplishes the same result which has been reached by judicial decision in some other states. In a Wisconsin case, cited by appellant, James W. Bradley died intestate. His parents and his two brothers had predeceased him. One brother left an adopted son; the other a daughter, the issue of his body. There was no question involving a lapsation statute for there was no will. The only question was whether the adopted son of the intestate's brother was an heir at law of the intestate. One cannot adopt heirs for third persons, said the court in substance in holding against the claim of the adoptee. The adoption statute of Wisconsin was substantially similar to the Oregon act, but the second exception in the Oregon statute was omitted therefrom. The court held in conformity with other cases cited that a child who is adopted is not thereby constituted an heir of the collateral kindred of the adoptive parents. *Estate of Bradley*, 185 Wis. 393, 201 N. W. 973, 38 A. L. R. 1 (1925). Other cases cited by appellant involve a similar situation and ruling. See *Batcheller-Durkee v. Batcheller*, 39 R. I. 45, 97 A. 378, L. R. A. 1916E, 545 (1916); *Hockaday v. Lynn*, 200 Mo. 456, 98 S. W. 585, 8 L. R. A. (N. S.) 117, 118 Ann. St. Rep. 672, 9 Ann. Cas. 775 (1906).

■ The same result would be reached under the Oregon statute by virtue of the express provision of the second exception to the effect that "he shall not be capable of taking * * * property from the lineal or collateral kindred of such parents by right of representation."

The opinions just mentioned are not in point in the case at bar. Being cases of intestacy the anti-lapse statute could not be involved. They are relevant only concerning inheritance and right of representation which right of representation arises only in the event of intestacy. 2 O. C. L. A. § 16-402. It thus appears that the Oregon statute, with its exceptions, effectively provides for the same result reached in the Wisconsin case. Adoptees do not take as heirs from intestate lineal or collateral kindred of adoptive parents.

 By our statute, the adoptee is to be deemed a natural child for the purposes of inheritance and all other legal consequences and incidents of the natural relation. To this generalization there are two express exceptions. There is therefore a strong presumption that no other exception is intended. *Kruckman v. Smith,* 126 Or. 395, at 398, 270 P. 474 (1928). The provisions of the anti-lapse statute define certain "legal consequences and incidents of the natural relation" which are not within the exceptions of the adoption laws. Those provisions therefore inure to the benefit of an adoptee. This conclusion is supported by the authorities.

For the sake of brevity we will group the cases most nearly in point upon the facts. In the following cases a testator devised an estate to a beneficiary who predeceased the testator. In each case the beneficiary left an adopted child and the question was whether the bequest lapsed under the anti-lapse statute. In each case it was held that the adopted child took the estate. *Warren v. Prescott,* 84 Me. 483, 24 A. 948, 17 L. R. A. 435, 30 Am. St. Rep. 370 (1892); *Matter of Walter's Estate,* 270 N. Y. 201, 200 N. E. 786 (1936); *In Re Moore's Estate,* 7 Cal. App. (2d) 722, 47 P. (2d) 533

(1935); *In Re Foster's Estate*, 108 Misc. 604, 177 N. Y. Supp. 827 (1919); *Dean v. Smith*, 195 Ark. 614, 113 S. W. (2d) 485 (1938); *Clark v. Clark*, 76 N. H. 551, 85 A. 758 (1913); *Smallwood v. Smallwood*, 121 N. J. Eq. 126, 186 A. 775 (1936). There were slight differences in the relevant statutes under which the foregoing cases were decided but the decisions are highly persuasive.

The leading case is *Warren v. Prescott*, supra. The Maine statutes in every essential particular were identical to those of Oregon. The anti-lapse statute provided:

"When a relative of the testator, having a devise of real or personal estate, dies before the testator, leaving lineal descendants, they take such estate as would have been taken by such deceased relative if he had survived." Rev. Stat. of Maine, 1930, p. 1241, Ch. 88, § 10.

The adoption statute provided:
"* * * and he is, for the custody of the person and right of obedience and maintenance, to all intents and purposes, the child of his adopters, with right of inheritance when not otherwise expressly provided in the decree of adoption, the same as if born to them in lawful wedlock, * * *." Rev. Stat. of Maine, 1930, p. 1209, Ch. 80, § 38.

The court said:
"* * * With two exceptions, neither of which is applicable to such a case, an adopted child becomes 'to all intents and purposes, the child of his adopters, the same as if born to them in lawful wedlock.' Such is the express language of our statute in relation to the adoption of children. Rev. St. c. 67, § 35.

"The exceptions are—First, that an adopted child shall not inherit property expressly limited to the heirs of the body of the adopters; and, secondly, that an adopted child shall not inherit property from their

(the adopters') lineal or collateral kindred by right
of representation. Rev. St. c. 67, § 35.

"It is plain that neither of these exceptions is applicable to the question now under consideration. They
relate to the right to inherit as heirs at law, and not to
the right to take under a will. To illustrate, we will
suppose that one of the adopting parents is possessed
of an estate expressly limited to the heirs of his body.
By virtue of the first exception, an adopted child cannot inherit—that is, cannot take as an heir at law—
this estate, or any portion of it. It must go to those to
whom it is expressly limited. But an adopted child
may rightfully inherit an estate not so expressly
limited. With respect to such an estate, he must be
regarded as a child, an heir, and a lineal descendant
of his adopting parents, the same as if he had been
born to them in lawful wedlock. By force of the second
exception, an adopted child cannot be regarded as an
heir at law of his adopting parents' kindred. By adoption, the adopters can make for themselves an heir,
but they cannot thus make one for their kindred. To
this extent, the two exceptions named operate as a
limitation upon the rights of an adopted child. But in
all other particulars he is the child, the heir, and a
lineal descendant of the adopting parents, to all intents and purposes, the same as if he had been born
to them in lawful wedlock. And within the rights and
powers thus conferred upon him, and without infringement of either of the exceptions referred to, an adopted
child may take a devise or legacy given by will to one
of his adopting parents, and thus prevent the devise
or legacy from lapsing in case the parent dies before
the testator, precisely the same, and with the same
limitations, as if he were a child born to such parent
in lawful wedlock.

"In such a case, a child born in lawful wedlock does
not 'inherit' the devise or legacy from his parents'
kindred. One who takes under a will does not 'inherit.'
To inherit is to take as an heir at law, by descent or
distribution. To take under a will is not to inherit;
and, when an adopted child takes a legacy given by

will to one of his adopting parents, he does not take as an heir at law of the parent's kindred. He does not 'inherit' the legacy from the testator. He takes as a lineal descendant of the legatee, by force of the statute. Rev. St. c. 74, § 10. Not as a lineal descendant by birth, but as a statutory lineal descendant, and as lawfully in the line of descent as if he were placed there by birth."

*Matter of Walter*, (N. Y.), supra, arose under a statute which provided that if a devisee who predeceases the testator shall be survived by a "child or other descendant" the devise shall not lapse. Held, that the adopted child of the devisee is a child or other descendant. See, also, *In Re Chinsky's Estate*, 159 Misc. 591, 288 N. Y. Supp. 666, at 673. To the same effect see *In Re Foster's Estate* (N. Y.) supra, in which case the court said:

"It has been urged upon me in the brief of counsel opposing the claim of Marjorie S. Johnson that she could not inherit from the father of her foster mother. There is support for that doctrine in the case of Winkler v. N. Y. Car Wheel Co., 181 App. Div. 239, 168 N. Y. Supp. 826. In my view of this case, the question cannot be determined by the question of inheritance. This decedent died testate, and not intestate. Whatever the questions that may have arisen as to the right of inheritance of this claimant, had this decedent died intestate, do not in my judgment arise in this case; the decedent having bequeathed his property to his children by his last will and testament."

The adoption statute of New York was in less general terms than our own.

*In Re Moore's Estate*, supra, arose under a statute providing against lapsation if the predeceased devisee leaves lineal descendants. The court cited *Warren v.*

*Prescott,* supra, and held that the adopted child was a lineal descendant of the adoptive parent.

In *Dean v. Smith,* supra, the statute provided against lapsation of a bequest if the legatee predeceases the testator but leaves a "surviving child or other descendant of such devisee or legatee." The adoption statute provided that the adopted child should be entitled to

"and receive all the rights and interests in the estate of such adopted father or mother by descent or otherwise, that such child would do if the natural heir of such adopted father or mother."

The court said:

"It seems conclusive from these decisions and from statutory provisions that the intention of the lawmakers, as interpreted by this court, was to invest an adopted child with all of the attributes of a natural child which it was possible for the law to confer."

It was held that the adopted child was the "child or other descendant" of the devisee.

In *Clark v. Clark,* supra, the New Hampshire statute provided:

"* * * The heirs *in the descending line* of a legatee or devisee, deceased before the testator, shall take the estate bequeathed or devised in the same manner the legatee or devisee would have taken it if he had survived." (Italics ours.)

The adoption statute was similar to that of Oregon, except that it omitted the second exception found in the Oregon statute. The court cited *Warren v. Prescott,* supra, with approval, and held that the adopted daughter is an heir in the descending line.

In the case of *Smallwood v. Smallwood*, supra, the pertinent portions of the statute provided:

"* * * That whenever any estate * * * shall * * * be devised or bequeathed * * * to any person being a child or other descendant of such testator * * * and such devisee * * * shall, during the life of such testator * * * die testate or intestate, leaving a child or children, * * * who shall survive such testator * * * such devise * * * shall not lapse, but the estate * * * shall vest in such child or children * * * of such * * ' * devisee, * * *." 4 Comp. St. 1910, p. 5866, § 22.

The adoption statute provides that the adoptee "shall be invested with every legal right, privilege, obligation and relation in respect to education, maintenance and the rights of inheritance to real estate, or to the distribution of personal estate on the death of such adopting parent or parents as if born to them in lawful wedlock." Comp. St. Supp. 1924, § 97-16.

The adoption statute is less inclusive than that of Oregon. The material portions of the anti-lapse statute differ only in using the words "child or children" instead of the words of the Oregon statute, "lineal descendants." Held, that the adopted child of the son of the testator takes the bequest as a child of the legatee. The court said:

"* * * Herein the question for determination depends on an interpretation of the pertinent statutes and not an ascertainment of testator's intent, as gathered from the will or surrounding circumstances." See also *In Re McEwan's Estate*, 128 N. J. Eq. 140, 15 A. (2d) 340 (1940); In Re Horvath's Estate, 155 Misc. 734, 279 N. Y. Supp. 189 (1935).

The following cases, while not directly in point, are persuasive: *In Re Cupples' Estate*, 272 Mo. 465,

199 S. W. 556 (1917), wherein it was held that the children of the testator's adopted daughter were direct lineal descendants of the testator. *In Re Hebb's Estate*, 134 Wash. 424, 235 P. 974 (1925) wherein it was held that an adopted child was a descendant of the adopting father. *In Re Winchester's Estate*, 140 Cal. 468, 74 P. 10 (1903) wherein it was held that the children of testator's adopted daughter were his lineal descendants. *In Re Cook's Estate*, 187 N. Y. 253, 79 N. E. 991, (1907) to the same effect. *Bourne v. Dorney*, 227 N. Y. 641, 126 N. E. 901 (1920) wherein it was held that a child adopted after the execution of a will and therefore not mentioned in it had the same rights as a natural child. The court, in the case of *In Re Roebuck's Estate*, 79 Misc. 589, 140 N. Y. Supp. 1107 (1913), in a tax case, said:

"* * * 'A lineal descendant is one who is in the line of descent from a certain person.' But the line of descent is not merely derived from the communication of blood by animal generation. 'The line of descent is the course 'that property takes according to law when the owner dies.'"

Seeking to support the contention that the bequest in the case at bar had lapsed, defendant cites *Rauch v. Metz*, (Mo.) 212 S. W. 357 (1919). The facts were similar to those in the case at bar, the claimant being the adopted daughter of Elizabeth Metz, the beneficiary under the will of Henry F. Pieper. Elizabeth had predeceased the testator. Under the provisions of section 546 of the Rev. Stat. of Mo. 1909, the question was whether the adopted child was a lineal descendant of Elizabeth Metz. The court relied upon two Missouri cases in which it had been held that the word "relative" referred to relatives by consanguinity only,

and so the court concluded that "lineal descendants" also referred to consanguinity only. There was a strong dissenting opinion in which *Warren v. Prescott* was cited and in which the cases relied upon by the majority were distinguished. So far as we know it has always been held that the word "relative", in the absence of statute, includes only relatives by consanguinity (*In Re Estate of Miller*, 117 Or. 399, 244 P. 526, 1926), but the court's conclusion that "lineal descendants" is also so limited appears to be a *non sequitur*. Both the testator and the beneficiary died in 1914 and the adoption of the claimant was under the provisions of section 1673, Rev. St. of Mo. 1909, which relates to adoption by deed and which provides that

"the child or children adopted shall have the same right against the person or persons executing the same, for support and maintenance and for proper and humane treatment, as a child has, by law, against lawful parents; * * *. This provision shall not extend to other parties, but is wholly confined to parties executing the deed of adoption."

This section bears no slightest resemblance to the Oregon adoption statute. The Missouri act was itself amended to provide that

"When a child is adopted in accordance with the provisions of this article, all legal relationship, and all rights and duties, between such child and its natural parents, shall cease and determine. Said child shall thereafter be deemed and held to be for every purpose, the child of its parent or parents by adoption as fully as though born to them in lawful wedlock." R. S. Mo. 1929, § 14079.

In the case of *St. Louis Union Trust Co. v. Hill*, 336 Mo. 17, 76 S. W. (2d) 685 (1934), the court points out that the rights of adopted children were radically

changed in 1917. Prior to that date "the statute expressly stated that the relation of parent and child was confined to the parties to the deed." The court added:

"* * * our decisions relative to adoption by deed could not aid us in construing the present statute. * * * Apparently the artificial relation is to be given the same effect as the actual relation."

The court quoted with approval from *Warren v. Prescott*, and said:

"* * * In other words, the adopted child is taken out of the blood stream of its natural parents and placed, by operation of law, in the blood stream of its adopting parents, if adopted under the provisions of our present statutes."

The case of *Rauch v. Metz* is no longer law even in the state of Missouri.

The defendant cites a Superior Court decision from Pennsylvania. In that case the testator made a bequest: "unto my beloved adopted daughter, Maggie," who predeceased the testator, leaving children. The court first held that there was no evidence that Maggie had ever been adopted by the testator, but it then proceeded with a lengthy discussion based upon the assumption, contrary to the fact, that the devisee was duly adopted. The statute provided that "no devise * * * in favor of a child or other lineal descendant of a testator shall * * * lapse * * *" etc. It was held that an adoptee is not a child or lineal descendant, but the court expressly distinguished this case from the one at bar by noting the difference in the two adoption statutes. Speaking of its prior decisions the court said:

"* * * These decisions bear directly upon the rights of the adopted child himself, and go to show

that our statute has not been given the broad construction that has been given to the statutes of other states, which provide that the adopted child is 'to all intents and purposes, the child of his adopters, the same as if born to them in lawful wedlock.' '' *Phillips' Estate,* 17 Pa. Superior Ct. 103 (1901).

The defendant cites 1 Underhill on the Law of Wills, 453, § 338, as follows:

"In many cases statutes provide that a legacy or a devise shall not lapse if the beneficiary shall leave 'descendants.' By this is meant lineal descendants, i. e., issue; but in no case including collateral kindred."

If counsel had read two lines further he would have found the following:

"* * * So, also, where by statute an adopted child occupies the *status* of one born to the adopting parent, he will be regarded as a lineal descendant, and will take a legacy given to a parent by adoption." Citing Warren v. Prescott, supra.

Defendant cites *In Re Jones' Estate,* 3 Cal. App. (2d) 395, 39 P. (2d) 847 (1932). In that case the testatrix devised her estate to her husband *or his heirs.* The husband predeceased her. The court observed that the words "or his heirs" were words of donation and not of limitation, so the only question was: Who were the heirs of the husband under the statutes relating to inheritance upon intestacy? A brother of the husband had adopted a child, Helen. He also died before the testatrix. Held, that Helen was not an heir of testatrix's husband. The anti-lapse statute was not involved. The adoption statute did not contain the broad words of the Oregon act. The decision in the Jones case is not in conflict with our conclusion here. The decision in the instant case depends upon the construction of

the adoption and anti-lapse statutes and not upon the statutes concerning intestate succession.

Defendant also cites *Wildman's Appeal (Estate of David Burr Disbrow)*, 111 Conn. 683, 151 A. 265 (1930). In that case the testator left a life estate to his daughter Clara with a remainder to Clara's "lineal descendants." Long after the death of the testator, Clara adopted a child Kenneth. Clara died and the question was whether her adopted child was a lineal descendant, as that term was employed in the will. The court observed that the fact that the adoption occurred long after the death of the testator, was "a circumstance of controlling importance," and held the child was not within the description of the will. The court said:

"* * * We are seeking to ascertain the intention of the testator *at the time he made his will.*" (Italics ours.)

The case is not in point. No similar situation could arise under the Oregon anti-lapse statute. In cases under that act the adoption occurs before the death of the adoptive parent and before the death of the testator. A period of time intervenes between the death of the adopting parent, who is the beneficiary under the will, and the death of the testator, during which time it may normally be assumed that the testator knows of the death of his named beneficiary, and being chargeable with knowledge of the anti-lapse statute he would have an opportunity to change his will if he was not content that the adopted child of his beneficiary should take the estate. There is a far stronger reason for assuming that the testator intended the adopted child to take in the case at bar than there was for such an assumption in the Wildman case.

One Oregon case requires serious consideration. *In Re Hayes' Estate (McGraw v. Holman)*, 161 Or. 1, 86 P. (2d) 424, 87 P. (2d) 766 (1938), involved the collectibility of collateral inheritance taxes. In substance, a gift was made in anticipation of death by Dr. Hayes to Donald Hayes McGraw. Under the provisions of the Oregon tax statute the gift was subject to a collateral inheritance tax unless the beneficiary was a lineal descendant of the donor. The donee was the adopted son of Dr. Hayes' daughter, and the court correctly stated the question as follows:

"The remaining issue is: Was Donald Hayes McGraw, the legally adopted son of Dr. Hayes' daughter, the 'lineal descendant' of Dr. Hayes."

The court cited numerous authorities to the effect that an adopted child has no right of *inheritance through his adoptive parents.* The court relied upon three decisions which "review virtually all of the authorities." The cases cited were as follows: *Re Bradley's Estate*, supra; *Batcheller-Durkee v. Batcheller*, supra; *Hockaday v. Lynn*, supra. All three of the cases cited related to the rights of adopted children in the event of intestacy and the substance of the decisions was to the effect that one cannot adopt heirs for third persons. The court correctly held that when the daughter of Dr. Hayes adopted Donald, she did not thereby make him the adopted grandson of her father. It was held, therefore, that Donald was not the lineal descendant of Dr. Hayes. The court said:

"It is our opinion that adoption under the sections of our code above mentioned created a relationship personal between the adoptive parents and the child."

It added, as pure dictum: "It does not make the latter a lineal descendant of the adopting parents."

Donald's relationship to his adoptive parents was in no wise involved in the case. Under the tax statute the only question related to his relationship to the father of his adoptive parents. The anti-lapse statute was not involved and neither the decision nor the dictum can be considered as an authority upon questions arising under that statute.

None of the other decisions cited by defendant-appellant are in point.

The decree of the circuit court is affirmed.